IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

PEDRO DIAZ MORENO,
an individual,

                    Plaintiff,                              No. 3:11-cv-1265-HZ

          v.

BANK OF AMERICA, N.A., MORTGAGE              OPINION & ORDER
ELECTRONIC REGISTRATION SYSTEMS,
INC., AS NOMINEE FOR BANK OF AMERICA,
and RECONTRUST COMPANY, N.A.

                    Defendants.


John A. Cochran
THE COCHRAN LAW FIRM
3404 S.E. 45th Avenue
Portland, Oregon 97206

          Attorney for Plaintiff

/ / /


1 - OPINION & ORDER

Pilar C. French
Kristen L. Tranetzki
LANE POWELL PC
601 S.W. Second Avenue, Suite 2100
Portland, Oregon 97204-3158

     Attorneys for Defendant

HERNANDEZ, District Judge:

     Plaintiff Pedro Diaz Moreno brings this foreclosure-related action against defendants

Bank of America, Mortgage Electronic Registration Systems (MERS), and ReconTrust

Company. Defendants move to dismiss for failure to state a claim. I grant the motion.

BACKGROUND

     On March 29, 2007, plaintiff borrowed $220,000 from lender Aegis Wholesale

Corporation, executing a promissory note in favor of Aegis. See Ex. 1 to Tranetzki Decl. at p. 1

(Deed of Trust, referring to promissory note).[1]  The note was secured by a Deed of Trust (DOT)

against real property in Happy Valley, Oregon. Ex. 1 to Tranetzki Decl.; Compl. at ¶ 1.5. The

DOT identifies plaintiff as the borrower, Aegis as the lender, and Fidelity National Title

---

    [1] Defendants request that I take judicial notice of the Deed of Trust, an Assignment of the Deed of Trust dated June 18, 2010, the Appointment of Successor Trustee dated June 18, 2010, the Notice of Default and Election to Sell dated June 22, 2010, a Rescission of the Notice of Default, and the Notice of Default and Election to Sell dated April 4, 2011, all of which were recorded in Clackamas County. Exs. 1-7 to Tranetzki Decl. Judicial notice of these documents is appropriate because they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). They are appropriately considered on a motion to dismiss. Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 989 (9th Cir. 2009).

    Defendants also request that I take judicial notice of several decisions from other judges in this District as well as from several Oregon circuit court judges. To the extent judicial notice is necessary, I grant the request.

2 - OPINION & ORDER

Company of Oregon as the trustee.  Ex. 1 to Tranetzki Decl. at p. 1.[2]  It also identifies MERS as

the "beneficiary under this Security Instrument."  Id.  The DOT states that MERS acts "solely as

nominee for Lender and Lender's successors and assigns[.]"  Id. at p. 2.

On June 18, 2010, MERS assigned the DOT to BAC Home Loans Servicing.[3]  Compl. at

¶ 1.8[4]; Ex. 2 to Tranetzki Decl.  The assignment was recorded in Clackamas County on June 22,

2010.  Id.  Also on June 18, 2010, BAC Home Loans Servicing appointed ReconTrust Company

as successor trustee to Fidelity National Title Insurance Company of Oregon.  Ex. 3 to Tranetzki

Decl.  The appointment of the successor trustee was recorded in Clackamas County on June 22,

2010.  Id.

On or about June 22, 2010, ReconTrust initiated foreclosure proceedings by filing a

Notice of Default and Election to Sell (NODES) in Clackamas County.  Ex. 4 to Tranetzki Decl.

The June 2010 NODES states that plaintiff had been in default since July 1, 2009, having failed

to pay monthly payments of $1,861.77 beginning on that date.  Id.  The June 2010 NODES

further states that the foreclosure sale would occur on November 1, 2010.  Id. That sale

apparently did not occur because on February 18, 2011, ReconTrust rescinded the June 2010

NODES.  Ex. 5 to Tranetzki Decl.  However, on April 7, 2011, ReconTrust issued a new

---

[2]  Plaintiff mistakenly alleges that the DOT identifies "Bank of America, N.A." as the lender.  Compl. at ¶ 1.7.  I disregard plaintiff's erroneous assertion.  See Roth v. Garcia Marquez, 942 F.2d 617, 625 (9th Cir. 1991) ("[W]hen the allegations of the complaint are refuted by an attached document, the Court need not accept the allegations as being true.").

[3]  Plaintiff does not challenge defense counsel's representation that defendant Bank of America, N.A. is a successor by merger to BAC Home Loans Servicing.  Tranetzki Decl. at ¶ 1.

[4]  The Complaint alleges that the assignment occurred on June 10, 2010.  Compl. at ¶ 1.8. A close reading of the actual assignment document suggests the correct date is June 18, 2010. Ex. 2 to Tranetzki Decl.

3 - OPINION & ORDER

NODES, again declaring plaintiff in default beginning on July 1, 2009, and this time setting a foreclosure sale date of August 15, 2011.  Ex. 6 to Tranetzki Decl.; Compl. at ¶¶ 1.9, 1.11.

Plaintiff filed this action on August 18, 2011, seeking to invalidate the foreclosure sale. Compl. at ¶ 1.11.  Although he filed the Complaint after the August 15, 2011 sale date, there is no dispute that the sale has not yet occurred.[5]

STANDARDS

On a motion to dismiss, the court must review the sufficiency of the complaint.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  American Family Ass'n, Inc. v. City & County of San Francisco, 277 F.3d 1114, 1120 (9th Cir. 2002).  However, the court need not accept conclusory allegations as truthful.  Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992).

A motion to dismiss under Rule 12(b)(6) will be granted if plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]"  Id. (citations and footnote omitted).

To survive a motion to dismiss, the complaint "must contain sufficient factual matter,

---

[5] The Complaint contains unexplained errors or inconsistencies including, as noted above, naming the wrong original lender and failing to explain how the Court can invalidate a foreclosure sale that has not yet occurred.  Any amended pleading submitted by plaintiff in conformance with this Opinion must correct these allegations.

accepted as true, to state a claim to relief that is plausible on its face[,]" meaning "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation omitted).  Additionally, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id.  The complaint must contain "well-pleaded facts" which "permit the court to infer more than the mere possibility of misconduct." Id. at 679.

DISCUSSION

Plaintiff brings five claims for relief:  (1) a declaratory judgment claim seeking a declaration that the foreclosure is invalid for failing to comply with the Oregon Trust Deed Act, Oregon Revised Statutes §§ (O.R.S.) 86.705 - 86.795 (OTDA), specifically O.R.S. 86.735(1); (2) a declaratory judgment claim seeking a declaration that the NODES failed to properly account for all the payments plaintiff made and thus violates O.R.S. 86.745; (3) a claim under the Truth in Lending Act, 15 U.S.C. §§ 1601–1615 (TILA); (4) a claim under the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601-2610 (RESPA); and (5) a claim under Oregon's Unfair Trade Practices Act, O.R.S. 646.605 - 646.656 (UTPA).[6]

In support of their motion, defendants argue that (1) plaintiff's claims sounding in equity are barred by plaintiff's failure to plead the ability to tender the amount due on the loan; (2) plaintiff cannot allege a justiciable controversy without curing his loan default; and (3) the claims fail on the merits.  Because I agree with defendants that plaintiff's claims lack merit, I decline to address defendants' other arguments.

---

[6]  Plaintiff collects the three statutory claims under his "Third Claim for Relief," but I treat them as separate claims.

5 - OPINION & ORDER

I. First & Second Claims for Relief - Violations of the OTDA

As in many similar cases in which borrowers challenge the validity of an impending

foreclosure, plaintiff here alleges that MERS was a sham beneficiary and lacked the power to

assign all beneficial interest under the DOT to BAC Home Loans Servicing, and accordingly,

BAC Home Loans Servicing lacked the power to appoint ReconTrust as successor trustee to

foreclose on the property.  I have previously held that naming MERS as a beneficiary in a DOT

does not violate the OTDA.  Richard v. Deutsche Bank Nat. Trust Co., No. 3:09–cv–123–AC,

2011 WL 2650735, at *3 (D. Or. July 6, 2011) ("Because the trust deed in the present case

explicitly names MERS as a beneficiary and specifically gives it the right to foreclose on

Plaintiff's property, I find no error in the Magistrate Judge's findings [that the deed of trust

authorized MERS to act as a beneficiary].").

Although some judges in this District have since reached the opposite conclusion, e.g.,

James v. ReconTrust Co., No. 3:11-cv-324-ST, 2012 WL 653871 (D. Or. Feb. 29, 2012); Hooker

v. Nw. Tr. Servs., Inc., No. 1:10-cv-3111-PA, 2011 WL 2119103 (D. Or. May 25, 2011), I

adhere to my previous conclusion.  See Sovereign v. Deutsche Bank, No. 3:11–cv–995–BR,

2012 WL 724796, at *8 (D. Or. Mar. 5, 2012) (acknowledging Judge Simon's Opinion in James,

but adhering to conclusion reached in Reeves v. ReconTrust Co, N.A., No. 3:11–cv–1278–BR,

2012 WL 652681 (D. Or. Feb. 28, 2012), that recognized MERS as a valid beneficiary under

Oregon law).[7]

---

[7] The issue of whether MERS is a valid beneficiary under a DOT has been addressed in a
number of cases within the District of Oregon in which judges have reached different
conclusions. The judges in this District have agreed to certify this issue and related issues to the
Oregon Supreme Court in four pending cases. The judges, however, have
decided not to stay other pending cases addressing MERS issues in the meantime. See Graham v.

Plaintiff also alleges that because there "is a gap of over three years" between the time the DOT was first executed in April 2007 and June 2010 when MERS assigned the DOT to BAC Home Loan Servicing, "the Deed of Trust must have been assigned to a third party at least once as evidenced by the fact that Bank of America, NA and MERS saw the need to execute a Corporate Assignment of Deed of Trust returning the recorded beneficial interest to Bank of America, NA."  Compl. at ¶ 2.10.

Plaintiff's allegation is problematic in at least two respects:  it is speculative ("must have") and it repeats the misstatement made earlier in the Complaint that Bank of America was the original lender.  As noted above, Aegis was the named lender in the DOT and the documents establish that Bank of America received its interest only in June 2010 upon assignment from MERS.  Thus, while plaintiff attempts to allege in the Complaint that there are unrecorded assignments of the Deed of Trust in violation of O.R.S. 86.735(1), the allegations are speculative and based on an erroneous assertion of fact.  The Complaint does not raise a claim based on an allegation that there were unrecorded assignments of the DOT.

In his opposition to the motion to dismiss, plaintiff attempts to establish an unrecorded assignment to Fannie Mae.  Ex. 1 to Mem. in Opp. to Mtn to Dismiss.  But, even if I were to consider this unauthenticated, unidentified exhibit tendered in response to a motion to dismiss, it shows only that Fannie Mae was an investor in the <u>loan</u>, not that it was a beneficiary of the DOT.  Plaintiff hypothesizes that based on "what is commonly known about the secondary mortgage market," "it is nearly certain" that the original lender sold the loan on the secondary mortgage

---

<u>ReconTrust Co., N.A.</u>, No. 3:11-cv-1339-BR, at *10 n.1 (D. Or. Mar. 27, 2012) (citing to cases and quoting the certified questions).

7 - OPINION & ORDER

market to an investment pool.  Mem. in Opp. to Mtn to Dismiss at p. 12.  He then cites to

paragraph 16 of his Complaint in an attempt to argue that he raised the "rebundling" allegation

there.  But, he did not.  There is no paragraph 16 in plaintiff's Complaint and no allegation that

plaintiff's loan was "sold, bundled, and re-aggregated."

      To the extent plaintiff argues that there were unrecorded assignments of the loan, the

allegation does not state a claim.  At least two judges in this District have rejected the argument

that assignments of the underlying note must be recorded before a non-judicial foreclosure may

commence.  Stolz v. Onewest Bank, No. 3:11-cv-762-HU, Findings & Recommendation at pp.

26-28 (D. Or. Jan. 13, 2012), adopted by Judge Brown (D. Or. Mar. 30, 2012); James v.

ReconTrust Co., No. 3:11-cv-324-ST, 2011 WL 3841558 (D. Or. Aug. 26, 2011), not adopted by

Judge Simon, 2012 WL 653871 (D. Or. Feb. 29, 2012).  As Judge Stewart explained in James:

> Nothing in Oregon law requires recording of each assignment of the trust
> deed when the underlying note is transferred. The only recording requirement is
> found in ORS 86.735(1) for all "assignments of the trust deed by the trustee or the
> beneficiary" before a non judicial foreclosure by advertisement and sale.
> However, this statute by its express terms only requires the recording of
> assignments by the parties who have a recorded interest in the real property
> providing security, that is, "the trustee or the beneficiary."
>
> Although a transfer or assignment of the note transfers the security interest
> for the protection of the beneficiary, it is not the same act as "an assignment of the
> trust deed by the trustee or the beneficiary" contemplated by ORS 86.735(1). That
> statute makes no mention of recording a transfer of the promissory note, opposed
> to the deed of trust. A promissory note is not a conveyance of real property and is
> not recorded or even susceptible to recordation. ORS 93.610, 93.630, 205.130.
> Recording interests in a promissory note would not serve the purpose of the
> recording statutes because the promissory note does not contain a description of
> the property, does not transfer title to real property, and does not affect title.
>
> Plaintiffs do not allege that either the Trustee (Fidelity National) or the
> Beneficiary (MERS) made any assignment of the Deed of Trust prior to the
> assignment by MERS to BACHLS. . . . Until that point in time, MERS remained

8 - OPINION & ORDER

> the Beneficiary to act for the Lender (NWNG) and its successors and assigns,
> even if the note was sold to an assignee or acquired by a successor. By recording
> the assignment of the Deed of Trust from MERS to BACHLS, BACHLS then
> acquired the power to act as the Beneficiary, rendering valid its subsequent
> appointment of RTC as the successor trustee.

James, 2011 WL 3841558, at *11 (footnote omitted).

As with plaintiff's argument that MERS is not a valid DOT beneficiary, the judges in this District have reached contrary conclusions regarding whether assignments of the note, as opposed to assignments of the DOT, violate the OTDA. See Id. (Judge Stewart disagreeing with Judge Panner's opinion in Hooker).  For the reasons explained by Judge Stewart in James, and followed by Judge Hubel in Stolz, I join those judges who have concluded that unrecorded transfers of the note do not violate O.R.S. 86.735(1).  Thus, plaintiff's allegation that there were unrecorded assignments of the note does not state a claim for violation of the OTDA.

Finally, plaintiff raises an entirely new claim in his memorandum in opposition to the motion.  Although I need not consider it because it is not pleaded in the Complaint, I address it here because it also requires dismissal.  Plaintiff states that "there is a question that needs to be raised in discovery regarding the timing of the recording of the executed and notarized [April 7, 2011 NODES] and when *the powers of a successor trustee were vested in ReconTrust*."  Mem. in Opp. to Mtn to Dismiss at pp. 25-26.  To the extent the argument is an extension of plaintiff's MERS argument, it is rejected for the reasons above.  Otherwise, it is dismissed for failure to state a claim because the documents conclusively show that ReconTrust was appointed a successor trustee on June 18, 2010, and that the appointment of ReconTrust as such was recorded in Clackamas County on June 22, 2010, well before the execution of the April 7, 2011 NODES.

I dismiss plaintiff's first claim for relief with prejudice.

9 - OPINION & ORDER

In his second claim, plaintiff alleges that the NODES violates O.R.S. 86.745 because it misstated the amount in default by not properly accounting for all of plaintiff's payments. Compl. at ¶¶ 3.1-3.6. O.R.S. 86.745 requires that the NODES state, inter alia, the "default for which the foreclosure is made" and "the sum owing on the obligation that the trust deed secures." O.R.S. 86.745(4), (5).

The operative NODES states that plaintiff was in default based on his

failure to pay when due the following sums:  monthly payments of $1,861.77 beginning 07/01/2009; plus late charges of $73.18 each month beginning 07/01/2009 payment plus prior accrued late charges of $-736.65; plus advances of $ 15.00; together with title expense, costs, trustee's fees and attorney's fees incurred herein by reason of said default; and any further sums advanced by the Beneficiary for the protection of the [property].

Ex. 6 to Tranetzki Decl.  The NODES further states that as a result of the default, the beneficiary declared all sums owing on the obligation to be immediately due and payable.  Id.  That amount is stated as $214,952.85 with seven-percent annual interest accruing as of June 1, 2009, plus other charges.  Id.

Plaintiff does not contest that he was in default.  He makes no allegations regarding the amount he contends he paid that is not reflected in the NODES or whether the alleged error in the NODES concerns the amount of the monthly payment, the date on which his payments stopped, or the total amount due based on the acceleration of the entire debt by the beneficiary.

Defendants argue that a claim alleging a defective notice of sale must comply with O.R.S. 86.742 which governs claims against a trustee who has failed to give notice to any person entitled to notice under O.R.S. 86.740(1)(c).  O.R.S. 86.742(1).  Although plaintiff here received notice, his claim is akin to a claim brought by one who has not received notice at all because it is based

on an argument that the defective notice is invalid, rendering it ineffective and precluding the

trustee from lawfully continuing with the sale.  See Freeman v. Names (In re Names), No. 10-

65697, 2011 WL 1837819, at *3, *4 n.5 (Bankr. D. Or. May 13, 2011) (where debtor alleged that

notice of foreclosure sale was defective because it omitted a required item under O.R.S.

86.745(9), court described debtor's argument as never receiving the notice to which she was

entitled and depriving the trustee of the authority to sell the property; further stating:  "At its core,

debtor's argument is that receiving a defective notice, no matter what the defect is, is akin to

receiving no notice at all[.]").

In a 2007 case, Judge King found that a plaintiff alleging that a notice of sale was

defective under O.R.S. 86.735 or O.R.S. 86.745 had to comply with the requirements of O.R.S.

86.742 and O.R.S. 86.759.  Stations West, LLC v. Pinnacle Bank of Or., No. 3:06-cv-1419-KI,

2007 WL 1219952, at *6-7  (D. Or. Apr. 23, 2007).  In that case, the plaintiff brought a claim

against the trustee alleging that there were flaws in the notice requirements of O.R.S. 86.735 and

O.R.S. 86.745 and specifically, that the notices were defective because they did not describe the

amount owing.  Id.  Thus, as in the instant case, the plaintiff in Stations West received the notice

of sale but contended that the notice failed to include a correct statement of the amount in

default.  Judge King dismissed the claim because the plaintiff failed to plead "it could have and

would have cured the default if the defective notice was proper" and failed to "allege the actual

damages from its lost opportunity to cure the default" as required under O.R.S. 86.742.  He

further found that the plaintiff failed to request information from the trustee under O.R.S. 86.759,

providing that the grantor, or other interested person, may request a "written statement of

information" from the trustee which shall provide the "exact amount required, as of a specified

11 - OPINION & ORDER

date, to cure the default or satisfy the obligation, including the costs of foreclosure, trustee fees,

attorney fees and per diem interest[.]"  O.R.S. 86.759; see also O.R.S. 86.757 (describing

contents of written request to trustee).

Judge King concluded that the "only way plaintiff can challenge [the] failure to comply

with statutory obligations [related to notice] . . . is by bringing a suit under ORS 86.742."  Id. at

*7.  Because the plaintiff in Stations West failed to comply with the requirements for suit, the

claim was dismissed.

In a later decision in the case, Judge King considered the claim a second time in a motion

brought by a different defendant.  Here, Judge King noted that the plaintiff alleged that the notice

did not state the specific default for which the foreclosure was made and failed to state the sum

owing on the obligation secured by the trust deed.  Stations West, 2008 WL 1944715, at *4 (D.

Or. Apr. 30, 2008).  Judge King recited that the notice at issue stated the name of the trustee and

his address, described the trust deed, stated that the plaintiff failed to pay the principal and

accrued interest, and further stated that the "sum owing on the obligation" was the principal

balance of $2,099.280.77, plus interest and other specified charges.  Id.  Judge King dismissed

the claim because even accepting that the notice was defective, the plaintiff's remedy was under

O.R.S. 86.742, the plaintiff had not shown that it requested information from the trustee under

O.R.S. 86.759, and the plaintiff had not alleged or shown that it could have and would have

cured the default.  Id.

Two more recent cases have distinguished Stations West on the basis that the claim at

issue was not based on a violation of the statutory notice requirements.  In Vida v. OneWest

Bank, F.S.B., No. 3:10-cv-987-AC, 2010 WL 5148473, at *9 (D. Or. Dec. 13, 2010), Judge

12 - OPINION & ORDER

Acosta denied the defendant's request to dismiss the plaintiff's fraud claim because although he recognized that "where the plaintiff's claim is premised on the statutory notice requirements [] the proper avenue of relief is through a claim under ORS 86.742[,]" the plaintiff's claim in <u>Vida</u> did not assert a failure to comply with statutory notice provisions.  Similarly, in Judge Stewart's decision in <u>James</u>, she distinguished a claim alleging a violation of O.R.S. 86.735(1) based on an alleged unrecorded assignment of the deed of trust from a claim alleging defects in the notice of sale to which O.R.S. 86.742 would apply.  2011 WL 3841558, at *4-5.

It is also worth noting that plaintiff himself concedes that the requirements of O.R.S. 86.742 apply to claims alleging defective notice.  Mem. in Opp. to Mtn to Dismiss at p. 30 ("The judge in *Stations West* rightly points out that the remedy for failure to provide proper notice is found in ORS 86.742.").

Plaintiff's second claim is dismissed because as in <u>Stations West</u>, even if the notice was defective, plaintiff fails to plead his ability to cure the default, that his damages resulted from the lost opportunity to cure the default, and that he requested the information from the trustee under O.R.S. 86.757 and O.R.S. 86.759.[8]

/ / /

_____

[8]  I also note that the NODES in the record establishes that it was not defective.  The NODES states that plaintiff was in default beginning with the July 1, 2009 monthly payment. Thus, it "[s]tate[s] the default for which the foreclosure is made.  O.R.S. 86.745(4).  It also states that the total sum owing is $214,952.85, with seven-percent annual interest accruing as of June 1, 2009, plus other charges.  Thus, the NODES "[s]tate[s] the sum owing on the obligation that the trust deed secures."  O.R.S. O.R.S. 86.745(5).  As Judge King recognized in his second <u>Stations West</u> opinion, the notice at issue in that case, which stated the total sum owing as the "principal balance" together with various specified fees, "appear[ed] to comply with the statute, and plaintiff has not described how the notice was defective."  2008 WL 1944715, at *4.  In the face of the actual document, plaintiff's conclusory allegations in support of this claim fail to state a claim that the NODES was defective by not accounting for all payments plaintiff allegedly made.

13 - OPINION & ORDER

II.  TILA Claim

Plaintiff alleges that Bank of America violated the TILA by failing to make certain disclosures, failing to deliver the "Good Faith Estimate," and by providing inconsistencies between the disclosed rate and the actual rate.  Compl. at ¶ 4.3.  A TILA claim must be brought within one year of the alleged violation.  15 U.S.C. § 1640(e); Hallas v. Ameriquest Mortg. Co., 406 F. Supp. 2d 1176, 1183 (D. Or. 2005) ("TILA requires that any claim [for damages] based on an alleged failure to make material disclosures be brought within one year from the occurrence of the violation.").

Plaintiff's TILA claim arises out of the origination of his loan which occurred on March 29, 2007, and thus must have been filed by March 29, 2008 to be timely.  Because this case was not filed until August 18, 2011, the claim is barred by the one-year statute of limitations.  King v. California., 784 F.2d 910, 914 (9th Cir. 1986) (TILA and its regulations and legislative history "evince a congressional intent to terminate liability one year after consummation of the loan contract.").

Moreover, the DOT shows that Aegis, not Bank of America, was the original lender and thus, the TILA claim brought against Bank of America fails to state a claim.  Under TILA, a borrower may state a claim for damages only against a "creditor."  15 U.S.C. § 1640(a).  A creditor is a person who "regularly extends . . . consumer credit" and "is the person to whom the debt arising from the consumer credit transaction is initially payable."  15 U.S.C. § 1602(g).  Because Bank of America was not the original lender, it is not the entity to which the debt was initially payable.

In his response to the motion to dismiss, plaintiff makes the following argument for

14 - OPINION & ORDER

equitable tolling of the one-year TILA limitations period: "Plaintiff is Hispanic and is subject to bring claims against Defendant based discrimination as a result of Plaintiff not understanding the nature of the documents as a result of not understanding said loan documents." Mem. in Opp. to Mtn to Dismiss at p. 34. He further argues that he needs to conduct discovery and take depositions to establish that he did not understand the nature of the loan documents given to him and "could not have understand the merit, extent or nature of TILA . . . violations that were committed against [him]." Id. He argues that the statute of limitations does not begin to run until he could have been reasonably expected to discover that the alleged violations occurred, which, he contends, was when he received a loan audit from a loan auditor and spoke with a translator in August 2011. Id.

There are several problems with plaintiff's argument. First, there are no allegations in the Complaint in support of equitable tolling and thus, on its face, the Complaint fails to state a TILA violation. Second, even if the allegation appeared in the Complaint, an allegation that plaintiff is Hispanic it is insufficient to trigger equitable tolling. Notably, plaintiff does not allege that he does not speak English.

Third, while equitable tolling suspends "the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action," the doctrine is generally limited to situations in which the application of the one-year period would be "unjust" or "frustrate the purpose" of the TILA. King, 784 F.2d at 915. Also, in order to prevent the one-year limitation from becoming meaningless, the plaintiff must allege that the defendant fraudulently concealed information that would have allowed plaintiff to discover his claim, that the defendant engaged in some other action

15 - OPINION & ORDER

affirmatively preventing plaintiff from discovering a claim, or that some other extraordinary circumstance would have made it reasonable for Plaintiff not to discover his claim within the limitations period.  Garcia v. Wachovia Mortg. Corp., 676 F. Supp. 2d 895, 905 (C.D. Cal. 2009) (explaining that "the mere existence of TILA violations and lack of disclosure does not itself equitably toll the statute of limitations" because "a contrary rule would render the one-year statute of limitations meaningless, as it would be tolled whenever there were improper disclosures.").

In a 2011 decision, the Ninth Circuit explained that "[w]e will apply equitable tolling in situations where, despite all due diligence, the party invoking equitable tolling is unable to obtain vital information bearing on the existence of the claim." Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1045 (9th Cir. 2011) (internal quotation omitted).  Following this principle, the court rejected the plaintiffs' argument that their TILA claim should have been tolled because they spoke only Spanish, but received loan documents written in English.  The court affirmed the district court's dismissal of the TILA claim because the plaintiffs had "not alleged circumstances beyond their control that prevented them from seeking a translation of the loan documents that they signed and received" and thus, they had "not stated a basis for equitable tolling." Id. at 1045-46 (citing Hubbard v. Fidelity Fed. Bank, 91 F.3d 75, 79 (9th Cir. 1996) (declining to toll TILA's statute of limitations when "nothing prevented [the mortgagor] from comparing the loan contract, [the lender's] initial disclosures, and TILA's statutory and regulatory requirements")). The Cervantes court also rejected an "equitable estoppel" argument because the plaintiffs failed to allege that the alleged misrepresentation and concealment of facts was "above and beyond the wrongdoing" that formed the basis for their TILA claim. Id. at 1046.

16 - OPINION & ORDER

The same can be said here.  As noted, plaintiff fails to assert any allegations regarding equitable tolling or equitable estoppel in his Complaint.  And, the arguments made in his response memorandum, where he raises the issue for the first time, do not support the application of either doctrine.  Vasconcellos v. Wells Fargo Home Loan Mortg., Inc., No. 3:10-cv-757-KI, 2010 WL 3732232, at *4 (D. Or. Sept. 20, 2010) (dismissing TILA claims on statute of limitations grounds where action was brought more than five years after plaintiff executed the original loan documents and plaintiffs did not allege "any actions on the part of [defendant] that would have prevented discovery of the alleged TILA violations.").

Finally, I reject plaintiff's suggestion that discovery is needed for plaintiff to support an equitable tolling theory.  Because plaintiff's TILA claim is based on alleged defects in the loan origination documents, he possessed all information related to any TILA claim at the time of that loan.  As defendants note, the "limitations period does not toll simply because a party is ignorant of her cause of action."  Grimmett v. Brown, 75 F.3d 506, 515 (9th Cir. 1996) (noting that the plaintiff "had available all the facts necessary to discover her cause of action with due diligence").

Plaintiff's TILA claim is dismissed.

III.  RESPA Claim

Plaintiff next alleges that the Bank of America violated the RESPA by failing to make certain disclosures, by failing to inform plaintiff of the intention to transfer servicing of the loan, by failing to inform plaintiff of actual transfers within fifteen days of the transfer, and by charging fees in excess of the reasonable value of goods.  Compl. at ¶ 4.4.

Like the TILA claim, this claim is dismissed because it is barred by the applicable

RESPA statute of limitations.  RESPA claims are subject to statutes of limitations of either one or three years.  12 U.S.C. § 2614.  Because plaintiff's RESPA claim arises out of the origination of his loan, the statute of limitations began to run on March 29, 2007.  The claim is time-barred.

Plaintiff again makes an equitable tolling argument.  As explained above, the equitable tolling allegations are not raised in the Complaint and in any event, are unavailing.

Additionally, plaintiff fails to allege any facts suggesting that the alleged RESPA violations caused him to suffer actual or pecuniary damages.  RESPA requires that plaintiffs establish that any RESPA violation resulted in actual damages. 12 U.S.C. § 2605(f)(1) ("[w]hoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts: . . . (A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.").   While plaintiff states in the prayer of his Complaint that he seeks $42,000 in damages for his Third Claim for Relief (which, given how plaintiff pleaded his claims encompasses the TILA, UTPA , and RESPA claims), there are no allegations establishing that the damages were caused by the alleged RESPA violations.  Lettenmaier v. Freddie Mac, No. 3:11-cv-156-HZ, 1022 WL 3476648, at *12-13 (D. Or. Aug. 8, 2011) (dismissing RESPA claim where plaintiffs failed to allege "actual damages); Burgett v. Mortg. Elec. Reg. Sys., Inc., No. 3:09-cv-6244-HO, 2010 WL 4282105, at *1 (D. Or. Oct. 20, 2010) (granting summary judgment to defendant on RESPA claim when plaintiff conceded there were no pecuniary damages suffered as a result of alleged RESPA violations).

The RESPA claim is dismissed.

18 - OPINION & ORDER

IV.  UTPA Claim

Plaintiff contends that Bank of America violated the UTPA by committing several "predatory lending practices."  Compl. at ¶ 4.5.  The allegations, like those in support of the TILA and RESPA claims, concern conduct at the origination of the loan.  Id.

Defendants move to dismiss the claim because the version of the UTPA applicable to the conduct which allegedly occurred in 2007, does not apply to credit availability.  O.R.S. 646.607(1) prohibits the use of any unconscionable tactic in connection with the sale, rental or other disposition of real estate, goods, or services.  At the time of the 2007 loan, the statute defined "real estate, goods or services" as follows, excluding extensions of credit:

> [T]hose that are or may be obtained primarily for personal, family or household purposes, or that may be obtained for any purposes as a result of a telephone solicitation, and includes franchises, distributorships and other similar business opportunities, but does not include insurance.

O.R.S. 646.605(6); see Haeger v. Johnson, 25 Or. App. 131, 135, 548 P.2d 532, 535 (1976) (holding that money transactions are not within the UTPA's definition of "real estate, goods or services"); accord Lamm v. Amfac Mortg. Corp., 44 Or. App. 203, 205, 605 P.2d 730, 731 (1980) (holding that loans or money are not within the scope of the UTPA).

The statute was amended effective March 23, 2010, to include "loans and extensions of credit." O.R.S. 646.605(6) (2010).  Because any alleged violations concerning the original loan occurred before the inclusion of this language, they came too early to be covered by Oregon's UTPA.  Hogan v. Nw. Tr. Servs., No. CV-10-6028-HO, 2010 WL 1872945 at * 8 (D. Or. May 7, 2010) (applying 2007 version of UTPA to plaintiff's claim that in 2007 defendants placed them in a loan that they could not afford and finding that UTPA did not apply to extensions of credit),

19 - OPINION & ORDER

aff'd, 441 Fed. App'x 490 (9th Cir. 2011).

Additionally, any UTPA claims are time barred. UTPA claims brought by a private party must be commenced "within one year from the discovery of the unlawful method, act or practice." O.R.S. 646.638(6). Plaintiff fails to allege any facts, or make a viable argument, that the discovery of any alleged UTPA violation could not have occurred upon review of the loan documents he executed in 2007. The UTPA claim is dismissed.

CONCLUSION

Defendants' motion to dismiss [14] is granted. The first claim for relief is dismissed with prejudice. The second claim for relief regarding the allegedly defective NODES is dismissed without prejudice. Plaintiff may amend his Complaint on this claim if he can, consistent with the obligations in Federal Rule of Civil Procedure 11(b), allege compliance with the requirements of O.R.S. 86.742 and O.R.S. 86.759, and if he can plead the alleged defect with specificity.

Plaintiff's TILA claim is dismissed without prejudice. Plaintiff may amend his Complaint on this claim if he can, consistent the obligations in Rule 11, allege the elements of an equitable tolling/estoppel of the statute of limitations, and if he can name the proper defendant. Plaintiff's RESPA claim is dismissed without prejudice. Plaintiff may amend his Complaint on this claim if he can, consistent with the obligations in Rule 11, allege the elements of an equitable tolling/estoppel of the statute of limitation and further allege that the alleged RESPA violations caused him actual damages. The UTPA claim is dismissed with prejudice.

/ / /

/ / /

/ / /

20 - OPINION & ORDER

Any amended complaint is due two weeks from the date of this Opinion & Order.

Defendants' requests for judicial notice [16, 24] are granted.

IT IS SO ORDERED.

Dated this ___27th___ day of _April_____, 2012

_/s/ Marco A. Hernandez_____
Marco A. Hernandez
United States District Judge

21 - OPINION & ORDER